UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE RAMOS**

-----------------------------------------------------------x
STEPHEN J. GURNIAK,

              Plaintiff,

vs.

EDNA EMILSEN,

              Defendant.
-----------------------------------------------------------x

**12 CIV 0481**

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, **STEPHEN J. GURNIAK**, by his undersigned counsel, complains of the defendant, **EDNA EMILSEN**, and alleges as follows:

### INTRODUCTION

1. This case seeks redress for false and defamatory statements, *per se* and *per quod*, made and published by the defendant about the plaintiff to the New York City Police Department, Internal Affairs Bureau.

2. These false and defamatory statements, all proven to be unfounded, resulted in the plaintiff being passed over for promotion by the City of New York and New York City Police Department from Detective Grade II to Detective Grade I, thus resulting in a substantial loss of income and pension/retirements.

3. The defendant's actions in making her false and unfounded statements were each performed intentionally, recklessly and/or with disinterested malevolence and were designed to interfere with and destroy the plaintiff's employment relationship and business reputation with the City of New York and New York City Police Department.

1

## THE PARTIES

3.  Plaintiff, **STEPHEN J. GURNIAK**, a natural person, is a resident of the State of New York.

4.  Defendant, **EDNA EMILSEN**, a natural person, is a resident of the State of New Jersey.

## JURISDICTION AND VENUE

13.  This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

14.  Venue is proper in this district pursuant to section 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this district.

## SUPPORTING FACTS

A.  <u>Plaintiff's Employment as a Detective for the City of New York</u>

15.  The Plaintiff, age 50, has been employed by the City of New York and New York City Police Department since 1987.

16.  The plaintiff became a Detective in 1995, and currently holds the position of Detective Grade II.

17.  The Plaintiff is currently assigned to the Midtown North Precinct, Detectives Unit.

18.  The plaintiff's record with the New York City Police Department has been exemplary, thus he was added to the very limited "list" of Detectives being considered for an elevation to Detective Grade I.

19. This promotion, if achieved, would have resulted in a salary increase to the plaintiff of no less than $15,000.00 per annum, plus overtime entitlements that would have increased from $57.00 per hour to $72.00 per hour.

20. In turn, and as a result of such salary increase, the level of the plaintiff's pension contributions would have similarly increased thus resulting in a significant increase to his final retirement benefits when he was required to retire from the New York City Police Department at age 62.

21. A promotion from Detective Grade II to Detective Grade I is based both on performance and requires the approval and support of the Police Commissioner.

22. During the calendar years 2010 and 2011 it had been, and continues to be at present, the internal policy of the New York City Police Department that no promotions are permissible nor can one even be considered when an internal or external investigation is pending against a service member whose promotion is under review.

23. Once passed over for promotion there are no reconsiderations and during the plaintiff's twenty (25) years with the New York City Police Department there has never been a Detective Grade II reconsidered for promotion after being passed over.

B. <u>Dispute Between the Defendant and the Plaintiff's Wife</u>

24. In 2010 the plaintiff's wife, Ms. Stacey Maher, was a police officer on disability leave.

25. Plaintiff and his wife had a close family relationship with the defendant's paramour, Mr. Andrew Schemmel.

3

26. Plaintiff had come to learn that Mr. Schemmel was a "person of interest" in connection with the death of his mother, Ms. Julianne Schemmel, who passed away under suspicious circumstances on August 15, 1995.

27. While Mr. Schemmel was questioned in connection with his mother's death, his then wife, Ms. Deborah Schemmel, provided him with an alibi defense.

28. Mr. Schemmel and Ms. Deborah Schemmel subsequently divorced.

29. Within the divorce action Ms. Deborah Schemmel executed an Affidavit within which she recanted her alibi statement.

30. On November 14, 2010 Mr. Schemmmel showed the plaintiff's wife the Affidavit in which the alibi statement was recanted.

31. The plaintiff's wife, as a police officer with of the New York City Police Department and as required by a member of service, informed Mr. Schemmel that she was required by law to advise the Homicide Detective (Detective O'Sullivan of the 45 Detectives' Bureau of the New York City Police Department) assigned to the investigation that Ms. Schemmel recanted her alibi.

32. This statement, made to Mr. Schemmel on November 14, 2010, resulted in a verbal and physical altercation between Mr. Schemmel and the plaintiff's wife.

33. On November 14, 2010 the plaintiff's wife attempted to reach Detective O'Sullivan, only to get his voicemail.

34. On November 15, 2010, the plaintiff's wife spoke with Detective O'Sullivan and the homicide investigation was, as a result, renewed.

35. In response to the plaintiff's wife's actions, Mr. Schemmel (on behalf of himself and Ms. Emilsen—the defendant herein) filed in January, 2011, among other

4

allegations, an Aggravated Harassment Complaint with the Justice Court in and for the Town of Ramapo.

36. The aforementioned Justice Court matter resulted in an arraignment on January 15, 2011 and, as a matter of ordinary procedure, a Temporary Order of Protection was issued against the plaintiff's wife that, among other things, required her to voucher her weapons and stay "no less than" 100 feet away from Ms. Emilsen and Mr. Schemmel.

37. The Justice Court allegations were vigorously contested and defended by the plaintiff's wife and on May 15, 2011 the matter was adjourned in contemplation of dismissal.

C.  The Defendant's False and Defamatory Statements

38. Unbeknownst to the plaintiff, and while the Justice Court matter was proceeding against the plaintiff's wife, the defendant (with the apparent belief that by attacking the plaintiff she could prevail in her dispute with his wife, undermine his wife's credibility and assist her paramour who was once again being criminally investigated), began making a series of false, malicious and unfounded complaints against the plaintiff, and others, to the Internal Affairs Bureau of the New York City Police Department.

39. These complaints were both verbal and in the form of e-mail and/or other written communication.

40. Specifically the defendant on the following date and time made the following untrue, fabricated and unfounded defamatory complaints about the plaintiff:

- On January 19, 2011, at 1330 hours, the defendant placed a telephone call to the New York City Police Department, Internal Affairs Bureau (while in the presence of a third-party who was not involved in an official capacity) and accused the plaintiff of conspiring to circumvent a court order, and stated:

"I've been e-mailing you a bunch of information and I'm not sure if you've had a chance to review anything yet.

She [Stacey Maher] was supposed to turn in her guns. Then we found out her husband was a cop also and the Judge allowed him to put the guns in his locker for her.

The husband's name is Stephen Gurniak.

Yeah, I don't know what his badge number is. Oh yeah he's a Detective with the 18th Precinct....uh, yeah Midtown North.

Well my boyfriend Andy...you know...we are both on this ...uh...Order of Protection. He went to the courthouse where it was granted I guess to you know to find it there and there's been a lot of nobody telling us any information.

The e-mail I sent you yesterday says which officer in that Department told us that the guns are allowed to be stored in Gurniak's locker.

I must have sent like at least ten (10) e-mails."

41. Each of these complaints and allegations as made by the defendant against the plaintiff were untrue when they were made.

42. Each of these complaints by the defendant was made to the Action Desk of the Internal Affairs Bureau ("I.A.B.") and were recorded and logged under Case Nos.: 11-02589 and 11-01898.

43. Once the I.A.B. logs were created, reports from those communications were generated.

44. Indeed on January 19, 2011 the plaintiff was interviewed by I.A.B. and a "49 Communications Memo" was created in response to the defendant's multiple allegations.

45. The complaints made by the defendant were classified as Command Incidents and disbursed throughout various Departments for investigation.

46. Each and every one of the defendant's allegations was determined to be unfounded, and plaintiff was only first made aware of these determinations on December 16, 2011 when the information was left in the plaintiff's mailbox by an undisclosed individual.

47. The timing and filing of these complaints by the defendant occurred when the plaintiff was to receive the sought after promotion, but given the pending complaints and investigations invoked by the defendant's false and unfounded allegations, the plaintiff was passed over for promotion to Detective Grade I destroying his life work to achieve this promotion of distinction.

48. As a result, the plaintiff was denied the substantial increase in salary and overtime benefits that would have been awarded to him with this promotion, and similarly lost the retirement benefits that he would have achieved with the promotion and salary increase.

## CLAIMS

### COUNT I

**TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONS**

49. Each of the above allegations is incorporated herein.

50. In making each of her false and unfounded statements (while in the presence of a third-party who was not involved in an official capacity) the defendant sought to intentionally, recklessly and/or with disinterested malevolence interfere with

and destroy the plaintiff's employment relationship and business reputation with the City of New York and New York City Police Department.

51. The plaintiff, at the time each of these false and unfounded complaints were made by the defendant, had a reasonable expectation of economic gain from his anticipated promotion to Detective Grade I.

52. The making of each of her false and unfounded statements by the defendants had a direct and proximate adverse effect on the plaintiff's employment relationship and business reputation with the City of New York and New York City Police Department.

53. As a result of the defendant's tortuous interference with the plaintiff's business and employment relations with the City of New and New York City Police Department, the plaintiff lost the ability for an increased salary and overtime benefits and was actually damaged in the sum of Three Hundred Thousand ($300,000.00) Dollars, plus lost retirement benefits which require an actuarial calculation.

54. The specific amount of damages suffered by the plaintiff will be established by the proof adduced in this action but exceeds the sum of Three Hundred Thousand ($300,000.00) Dollars.

## COUNT II

### DEFAMATION *PER SE*

55. Each of the above allegations is incorporated herein.

56. Each of the verbal and written statements made by the defendant to the City of New and New York City Police Department on and prior to January 19, 2011,

(while in the presence of a third-party who was not involved in an official capacity) were concerning the plaintiff.

57. The defendant on and prior to January 19, 2011 published each of her false and unfounded statements to the City of New and New York City Police Department by either telephone, written communication or both.

58. Each of the statements made to the City of New and New York City Police Department on and prior to January 19, 2011 concerning the plaintiff were false when made.

59. The defendant's statements concerning the plaintiff were made intentionally, recklessly and/or with disinterested malevolence.

60. The defendant's statements regarding the plaintiff, in so far as they accused the plaintiff of engaging in criminal conduct, namely conspiring to violate a court order, were *per se* defamatory.

61. As a result of the defendant's *per se* defamatory statements the plaintiff's business and employment relations with the City of New and New York City Police Department were damaged and the plaintiff lost the ability for an increased salary and overtime benefits and was actually damaged in the sum of Three Hundred Thousand ($300,000.00) Dollars, plus lost retirement benefits which require an actuarial calculation.

62. The specific amount of damages suffered by the plaintiff will be established by the proof adduced in this action but exceeds the sum of Three Hundred Thousand ($300,000.00) Dollars.

## COUNT III

## DEFAMATION *PER QUOD*

63. Each of the above allegations is incorporated herein.

64. Each of the verbal and written statements made by the defendant to the City of New and New York City Police Department on and prior to January 19, 2011 were concerning the plaintiff.

65. The defendant on and prior January 19, 2011 published each of her false and unfounded statements to the City of New and New York City Police Department by either telephone, written communication or both.

66. Each of the statements made to the City of New and New York City Police Department (while in the presence of a third-party who was not involved in an official capacity) on and prior to January 19, 2011 concerning the plaintiff were false when made.

67. The defendant's statements concerning the plaintiff were made intentionally, recklessly and/or with disinterested malevolence.

68. The defendant's statements regarding the plaintiff, in so far as they accused the plaintiff of engaging in impermissible conduct as a police Detective, and under each of the extrinsic facts unique to these events, were defamatory *per quod*.

69. As a result of the defendant's *per quod* defamatory statements the plaintiff's business and employment relations with the City of New and New York City Police Department were damaged and the plaintiff lost the ability for an increased salary and overtime benefits and was actually damaged in the sum of Three Hundred Thousand ($300,000.00) Dollars, plus lost retirement benefits which require an actuarial calculation.

70. The specific amount of damages suffered by the plaintiff will be established by the proof adduced in this action but exceeds the sum of Three Hundred Thousand ($300,000.00) Dollars.

## COUNT IV

## INJURIOUS FALSEHOOD

71. Each of the above allegations is incorporated herein.

72. Each of the verbal and written statements made by the defendant to the City of New and New York City Police Department on and prior to January 19, 2011 (while in the presence of a third-party who was not involved in an official capacity) was concerning the plaintiff.

73. The defendant on and prior to January 19, 2011 published each of her false and unfounded statements to the City of New and New York City Police Department by either telephone, written communication or both.

74. Each of the statements made to the City of New and New York City Police Department on and prior to January 19, 2011 concerning the plaintiff was false when made, the defendant knew such statements were false when they were made and/or acted in reckless disregard of their truth or falsity when made.

75. The defendant's statements concerning the plaintiff were made intentionally, recklessly and/or with disinterested malevolence and intended to cause harm to the plaintiff's pecuniary interests and/or that defendant should have known that her false and unfounded statements were likely to cause damage to the plaintiff's pecuniary interests.

76. As a result of the defendant's injurious falsehoods regarding the plaintiff, the plaintiff's business and employment relations with the City of New and New York City Police Department were damaged and the plaintiff lost the ability for an increased salary and overtime benefits and was actually damaged in the sum of Three Hundred Thousand ($300,000.00) Dollars, plus lost retirement benefits which require an actuarial calculation.

77. The specific amount of damages suffered by the plaintiff will be established by the proof adduced in this action but exceeds the sum of Three Hundred Thousand ($300,000.00) Dollars.

## COUNT V

## PRIMA FACIE TORT

78. Each of the above allegations is incorporated herein.

79. In the alternative to each of the allegations as are set forth above, it is claimed that each of the verbal and written statements made by the defendant to the City of New and New York City Police Department on and prior to January 19, 2011 (while in the presence of a third-party who was not involved in an official capacity) were intended to inflict harm upon the plaintiff.

80. The false and unfounded statements made by the defendant on and prior to January 19, 2011 were made during the normal use of the call in methods offered by the Internal Affairs Bureau to the New York City Police Department.

81. The defendant's statements concerning the plaintiff were made with disinterested malevolence and caused special damages to the plaintiff in the form of a lost increase in salary and overtime benefits, plus lost retirement benefits.

82. The specific amount of special damages suffered by the plaintiff will be established by the proof adduced in this action but exceeds the sum of Three Hundred Thousand ($300,000.00) Dollars based upon actual losses.

## JURY DEMAND

83. The plaintiff hereby demands a trial by jury on all issues so triable in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiffs respectfully pray for the following relief:

i. That the plaintiff be awarded damages on the First Count of his Complaint for Tortious Interference with Employment Relations and be awarded monetary damages in a sum of no less than Three Hundred Thousand ($300,000.00) Dollars.

ii. That the plaintiff be awarded damages on the Second Count of his Complaint for Defamation *Per Se* and be awarded monetary damages in a sum of no less than Three Hundred Thousand ($300,000.00) Dollars.

iii. That the plaintiff be awarded damages on the Third Count of his Complaint for Defamation *Per Quod* and be awarded monetary in a sum of no less than Three Hundred Thousand ($300,000.00) Dollars.

iv. That the plaintiff be awarded damages on the Fourth Count of his Complaint for Injurious Falsehood and be awarded monetary damages in the sum of Three Hundred Thousand ($300,000.00) Dollars.

v. That the plaintiff be awarded damages on the Fifth Count of his Complaint for Prima Facie Tort and be awarded monetary damages in a sum of no less than Three Hundred Thousand ($300,000.00) Dollars.

      vi.    Such other and further relief, at law or in equity, that the Court may deem just and proper.

Dated: Pearl River, New York
       January 19, 2012

                        Respectfully submitted,
                        **LAW OFFICE OF ROBERT S. SUNSHINE, P.C.**

                        By: _____
                        **ROBERT S. SUNSHINE, ESQ.**
                        One Blue Hill Plaza, 3rd Floor
                        P.O. Box 1647
                        Pearl River, New York 10965
                        (845) 735-1300
                        (845) 735-2826 (Facsimile)
                        rs@rsunshinelaw.com (E-Mail)

                        Attorney for Plaintiff