UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN GURNIAK,

                                    Plaintiff,

            -against-                                **AFFIRMATION AND STATEMENT OF LAW IN
                                                     SUPPORT OF THE MOTION**

EDNA EMILSEN,

                                    Defendant.       **CIVIL ACTION CASE NO.: 12-CV-0481 (NSR)**

            ELLIOT H. FULD, an attorney licensed to practice law in the Court of the State of New

York and of the Southern District of New York affirms the following under the penalties of

perjury:

1.  I represent the Defendant herein and I submit this affirmation in support of the motion

    seeking court permission to submit a Third Amended Answer and to disqualify opposing

    counsel because of an inherent conflict of interest in his representation of Plaintiff

    herein.


                                        **STATEMENT OF FACTS**


2.  Robert S. Sunshine represents the Plaintiff in this action.  On August 14, 2006, Andrew

    Schemmel retained Robert S. Sunshine, Plaintiff's counsel herein, to represent and

    defend him from allegations made in a Child Protective Services (CPS) report involving

    the abuse and neglect of one or more of Mr. Schemmel's children.  Mr. Schemmel paid a

    retainer to Robert S. Sunshine, P.C. and both Mr. Schemmel and Mr. Sunshine executed

    a retainer agreement and a Statement of Client's Rights and Responsibilities (Exhibit

1

"A"). After six months of proceedings, the allegations against Andrew Schemmel were deemed to be unfounded and pursuant to the confidential and privileged nature of those proceedings as mandated by NYS Social Services Law §422, the records of those proceedings were sealed (Exhibit "B").  As the letter from the New York State Office of Children & Family Services informed Mr. Sunshine regarding the report of child abuse and maltreatment made against Andrew Schemmel:

> "…[i]t is our decision to legally seal the report.  Therefore in accordance with the law, the report has been amended to show it was unfounded, and the report and all information identifying your client as the subject of this report has been amended to legally sealed by the New York State Child Abuse and Mal treatment Register.  This report may only be unsealed and made available under limited circumstances as provided by law…."(Exhibit "B")

3. However, Robert S. Sunshine as attorney for Andrew Schemmel was and is privy to all the allegations and facts divulged in those confidential proceedings and could potentially use those allegations and facts when cross-examining Andrew Schemmel in this proceeding.

4. Robert S. Sunshine has previously acknowledged a conflict with prior representation of Andrew Schemmel.  During Andrew Schemmel's divorce proceeding, his ex-wife had subpoenaed cellular telephone records of Stacy Maher, **Stephen Gurniak's** wife, and Ms. Maher retained Mr. Sunshine to represent her during that subpoena process. Subsequently, when Andrew Schemmel sought to retain Robert S. Sunshine, Mr. Sunshine wrote Ms. Maher a letter requesting a waiver of any potential conflict, which

2

Ms. Maher granted (Exhibit "C"). Andrew Schemmel paid Mr. Sunshine's fee for those services (Exhibit "D").  Upon information and belief, it was during those proceedings that Robert S. Sunshine became privy to facts regarding Mr. Schemmel's divorce and alibi recantation, as alleged in Paragraphs "26"through "32" of the Complaint herein.

5.  It was Mr. Sunshine's prior representation of Andrew Schemmel that allowed Mr. Sunshine, now representing Stephen Gurniak herein, to craft a complaint which links Edna Emilsen to his former client, Andrew Schemmel.

6.  Paragraphs "24" through"37" of the Complaint in this case, allege a series of relationships to support Plaintiff's contention that Defendant Edna Emilsen and her "paramour" Andrew Schemmel possessed a motive to fabricate the complaint to the Internal Affairs Bureau.  The Complaint alleges that: Plaintiff and Ms. Maher were "close" with Andrew Schemmel; that Plaintiff learned that Andrew Schemmel was a suspect in an investigation surrounding the death of his mother, Julianne Schemmel; that Andrew Schemmel's wife provided an alibi for her husband; that during the Schemmels' divorce, Mrs. Schemmel executed an affidavit in which she recanted the alibi; that Andrew Schemmel showed Stacy Maher that affidavit and Ms. Maher told Andrew Schemmel that as a Police Officer, she had a legal obligation to advise the assigned Homicide Detective of the recantation; this resulted in a verbal and physical altercation" between Andrew Schemmel and Stacy Maher and "in response to [Ms. Maher's] actions".....

"...**[Andrew] Schemmel (on behalf of himself and Ms. Emilsen-the defendant herein) filed in January, 2011, among other allegations, an Aggravated Harassment Complaint with the Justice Court in and for the Town of Ramapo"** (Par. 35 of the Complaint).

7.  Because of these various disputes between the Plaintiff, Plaintiff's wife Stacey Maher (also a police officer) on one side and Ms. Emilsen and Mr. Schemmel on the other, Stacey Maher was arrested by the Ramapo Police Department for harassing Defendant and Mr. Schemmel.   On January 15, 2011, the Defendant and Andrew Schemmel received a Temporary Order of Protection prohibiting Stacey Maher from any contact with them and requiring Ms. Maher to surrender all "handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed to the Ramapo Police Department on or before Sunday, January 16, 2011" (Exhibit "E").

8.  On or about January 19, 2011, Ms. Emilsen and Mr. Schemmel called the Ramapo Town Court to confirm that Ms. Maher had surrendered her weapons as required by the Court Order.   Mr. Schemmel learned from the Ramapo police that the weapons had not been surrendered as ordered by the Court but instead had been given to Detective Gurniak (Plaintiff), to be stored in his locker  (Exhibit "F").

9.  Ms. Emilsen **AND** Mr. Schemmel then filed a complaint with the Police Department's Internal Affairs Bureau against Plaintiff and Ms. Maher, for violating and interfering with the Ramapo Justice Court Order and not surrendering Ms. Maher's weapons (Exhibit "F").  Paragraph "40" of the Complaint clearly identifies the complaint to Internal Affairs as being made on behalf of both Edna Emilsen and Andrew Schemmel.   Upon information and belief, the complaint was disposed of by the New York City Police Department as being unfounded because on January 19, 2011 Ms. Maher's weapons were vouchered with the Police Department and on January 21, 2011 a New York City Detective delivered those weapons to the Ramapo Police Department (Exhibit "G").

10. The criminal complaint against Stacy Maher in the Ramapo Justice Court was resolved on November 16, 2011, by Ms. Maher agreeing to an "ACD" and a permanent order of protection in favor of Ms. Emilsen and Andrew Schemmel through May 16, 2012 (Exhibit "H").

11. Plaintiff now sues claiming that the complaint made to Internal Affairs by Andrew Schemmel and Defendant was, among other things, defamatory;  that because of those complaints, Mr. Gurniak did not receive a promotion from Detective Grade II to Detective Grade I; and that therefore Detective Gurniak has suffered monetary damages.

12. In an attempt to sidestep a disqualification motion, Mr. Sunshine has been careful not to name Andrew Schemmel as a party Defendant, although the allegations of Plaintiff's Complaint clearly target both Edna Emilsen <u>AND</u> Andrew Schemmel.  Plaintiff does not name Andrew Schemmel as a Defendant, yet attributes statements and actions to Andrew Schemmel which Defendant will be required to rebut at trial.  For that purpose, Andrew Schemmel will be required to testify at any future trial and Mr. Sunshine, his former retained attorney in the Child Protective proceedings case, will have the opportunity to cross examine his former client potentially using all information and confidences acquired in that sealed proceeding.

13. It is clear (1) that Robert S. Sunshine represented Mr. Schemmel; (2) that there is a serious connection between those representations and the issues in this case and (3) that Mr. Sunshine has access to relevant, privileged information while representing Mr. Schemmel which can be used to either cross examine Mr. Schemmel and Ms. Emilsen or to unfairly damage their credibility– all of which warrant Mr. Sunshine's disqualification.

## <u>LEGAL AUTHORITY FOR PERMITTING A THIRD AMENDED ANSWER TO BE FILED</u>

Whereas generally, a party must state any affirmative defenses in a responsive pleading, <u>Fed. R. Civ. P.</u> 8(c)(1), the Federal Rules provide that before trial, leave to amend a pleading should be freely given when justice requires. <u>Fed. R. Civ. P.</u> 15(a)(2).

The Second Circuit Court of Appeals has upheld this standard and ruled that "Fed. R. Civ. P. 15(a) requires that leave to amend the pleadings be granted freely 'when justice so requires'" and that "such leave should be denied where the amendment would cause substantial prejudice to a party to the action." Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1155 (2d Cir. N.Y. 1968). See also Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. N.Y. 1993).

In determining whether to grant leave to amend, the Court considers "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction. " Block, 988 F.3d at 350.

The Court has noted that "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Id. The Second Circuit has gone so far as to recognize that even a three and a half year delay between the initial filing and a motion to amend is an inadequate basis to deny leave absent a showing of prejudice or bad faith. See Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380, 385 (2d Cir. N.Y. 1968).

Here, Plaintiff filed the summons and complaint with the Court on January 19, 2012. Seven months later, on July 31, 2012, Plaintiff served the summons and complaint on Defendant. See Affidavit of Service, Exhibit "I". Defendant filed his answer on September 7,

2012. Prior defense counsel did not include within the answer the affirmative defense of qualified privilege.

Present counsel was retained in April of 2013 and filed the notice of appearance on April 8, 2013. Immediately thereafter, present counsel sought to file motions for leave to amend the Answer. A telephone conference was held on May 17, 2013 and a pre-motion conference was held in Court on July 11, 2013. Based on the procedural history, the only delay to be considered is that between the filing of the Answer and present counsel's retention, upon which Plaintiff and the Court was placed on notice that Defendant wished to include the affirmative defense of qualified privilege.

Aside from this minor delay, Plaintiff would not be negatively impacted by the Court's leave to amend the Answer. Plaintiff cannot demonstrate any prejudice and certainly none that would amount to substantial prejudice. Inasmuch as Plaintiff was aware that the alleged defamatory statement was made to the Internal Affairs Bureau in the context of an investigation into Plaintiff's conduct in his wife's criminal case in Ramapo, New York, Plaintiff and his counsel were well aware of the facts underlying the claim of "qualified privilege" and cannot be surprised by such a defense being asserted.  In fact, documents alerting both counsel to the facts supporting such an affirmative defense have already been exchanged between the parties in Rule 26 disclosures. If anything, Plaintiff's counsel was probably more surprised that prior defense counsel **did not** raise that affirmative defense.  Leave to amend would not require Plaintiff to expend significant additional resources and would not significantly delay the resolution of the matter.

Further, Defendant's request is made in good faith. The timing of the assertion of qualified privilege is based primarily on Defendant's retention of new counsel. Whereas prior counsel did not assert qualified defense as an affirmative defense, present counsel finds this defense crucial and applicable to Defendant's actions as set forth by the Plaintiff.

Finally, the New York common law defense of qualified privilege is predicated on serving the interests of justice. Statements alleged to be defamatory, are subject to a "qualified privilege" either when they are made to an investigative body by a person with a public or private duty, legal or moral, or when they are made by one person to another involving a subject in which both have a common interest. Chandok v. Klessig, 632 F.3d 803 (2nd Cir. 2011). The New York Court of Appeals has long recognized that the qualified privilege serves the public interest "by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether." Liberman v. Gelstein, 80 N.Y.2d 429, 437 (N.Y. 1992)(internal citations omitted).

Here, the allegations of Defendant's and Mr. Schemmel's complaint to Internal Affairs regarding Plaintiff and Ms. Maher's disobeying the Ramapo Justice Court order, conform to the affirmative defense of qualified privilege. Therefore, granting leave to add the affirmative defense of qualified privilege serves the interests of justice and should be granted freely as per Fed. R. Civ. P. 15(a)(2).

Based on the above, the Court should grant Defendant leave to file an amended Answer in order to add the affirmative defense of qualified privilege.

## LEGAL AUTHORITY FOR THE DISQUALIFICATION OF ROBERT S. SUNSHINE

N.Y. Code Prof. Resp. Canon 4 provides that "[a] lawyer should preserve the confidences and secrets of a client." Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety." The Second Circuit Court of Appeals has long recognized that the Code's "salutary provisions have consistently been relied upon by the courts of this district and circuit in evaluating the ethical conduct of attorneys." Hull v. Celanese Corp., 513 F.2d 568, n.12 (2d Cir. N.Y. 1975) (internal quotations omitted).

"The objective of the disqualification rule is to preserve the integrity of the adversary process". Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir. N.Y. 1983). In this light, attorney disqualification is appropriate when:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is either direct proof that target counsel was in receipt of client confidences that he could potentially use against the moving party or there exists a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit from which it can be inferred that confidential information was received; United States Football League v. National Football League, 605 F. Supp. 1448, 1461 (S.D.N.Y. 1985),

and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation

of the client. <u>Hempstead Video, Inc. v. Village of Valley Stream</u>, 409 F.3d 127 (2nd Cir., 2005); <u>Bd. Of Educ. V. Nyquist</u>, 590 F.2d 1241 (2nd Cir., 1997).

In the present case, Plaintiff sues only Edna Emilsen for defamation but in his complaint he accuses Andrew Schemmel, Defendant's boyfriend, of being part and parcel of the defamatory process.  Plaintiff alleges that it was Andrew Schemmel who was in a dispute with Plaintiff's wife (Par. 26-34); Andrew Schemmel who initiated a criminal complaint against Plaintiff's wife in which he obtained an Order of Protection against Plaintiff's wife (Par. 35-37); Andrew Schemmel and Defendant who filed a complaint with the Internal Affairs Bureau when they believed that Plaintiff sought to subvert the terms of the Order of Protection (Par. 38-44). (See Exhibit "F" which contains the Internal Affairs Report that lists both Andrew Schemmel and Edna Emilsen as the "Complainant-Victims" who filed the alleged defamatory report with Internal Affairs).

Andrew Schemmel is a former client of Plaintiff's counsel, Robert S. Sunshine.  Mr. Sunshine represented Andrew Schemmel in a child abuse proceeding involving Andrew Schemmel's son (See Exhibit's "A" and "B") – a proceeding that was ultimately dismissed as unfounded resulting in a sealing of all records related to that matter.  However, the sealing of those records neither seals the confidences that Mr. Schemmel revealed to Mr. Sunshine nor does it seal the records Mr. Sunshine possesses from that proceeding.  As stated by Mr. Sunshine in his letter as contained in Exhibit "B", he still retains that file regarding Andrew Schemmel and will do so until the year 2014.

By the allegations in their complaint, Plaintiff or Plaintiff's counsel has put into issue a myriad of actions and statements that Plaintiff attributes <u>only</u> to Andrew Schemmel and will require Andrew Schemmel to testify at any trial that will occur in this Court.  At that time, Robert S. Sunshine will cross-examine Andrew Schemmel and can potentially damage Schemmel's credibility with confidential information revealed during the prior representation in the abuse proceeding.

It would seem that Plaintiff's maneuver in leaving out Andrew Schemmel as a party defendant is designed to allow Robert S. Sunshine to bring this action for Plaintiff and somehow avoid what is a glaring conflict. The conflict exists when **"…[a]n attorney is at least potentially in a position to use privileged information concerning the other side through prior representation…thus giving his present client an unfair advantage**." <u>Lorber v. Winston</u>, 2012 U.S. Dist. LEXIS 167368 (E.D.N.Y. Nov. 24, 2012) [citing <u>Mitchell v. Metro. Life Ins. Co</u>., 01 Civ. 2112 (WHP), 2002 U.S. Dist. LEXIS 4675, at *10-11 (S.D.N.Y. Mar. 20, 2002) (quoting <u>Armstrong v. McAlpin,</u> 625 F.2d 433, 444 (2d Cir. 1980), vacated on other grounds and remanded, 449 U.S. 1106, 101 S. Ct. 911, 66 L. Ed. 2d 835 (1981)]; see also <u>Glueck v. Jonathan Logan, Inc</u>., 653 F.2d 746, 748 (2d Cir. 1981).

Several facts are clear.  It is clear by the allegations in the Complaint and by the Exhibits attached to this motion that Andrew Schemmel could have and should have been a party defendant herein.  It is also clear that Plaintiff and Plaintiff's counsel understood the meaning and ramifications of a "conflict of interest" because in 2006, Robert S. Sunshine knew that he had to obtain a waiver from Plaintiff's wife so that he could represent her as well as Andrew

Schemmel (See Exhibits "C" and "D").  Finally, it is clear that Plaintiff's counsel possesses the potential to use prior client confidences to damage Andrew Schemmel and by implication damage Defendant's case.

In order to preserve the integrity of trial, the Court has recognized that disqualification is required when prior counsel will be required to cross-examine a former client in a manner likely to taint the trial process. Lorber v. Winston, 2012 U.S. Dist. LEXIS 167368 (E.D.N.Y. Nov. 24, 2012)(citing  Skidmore v. Warburg Dillon Read LLC, 99 Civ. 10525 (NRB), 2001 U.S. Dist. LEXIS 6101, at *14 (S.D.N.Y. May 10, 2001)). Disqualification can even be based on the prior representation of a non-party witness who stands to be cross-examined by his former attorney when the representation will result in tangible prejudice. See Skidmore, supra.

What will this Court do when Mr. Sunshine cross examines his former client, Andrew Schemmel, using confidential information gleaned in the prior representation and in the prior attorney-client relationship?  Failure to disqualify counsel at this juncture only leaves the parties and the Court open to chaos in the future.

WHEREFORE, it is respectfully requested that the Court grant the relief sought herein.

Dated: The Bronx, NY
           September 23, 2013

                                                    *ELLIOT H. FULD*

                                        _____
                                                    ELLIOT H. FULD