UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEPHEN J. GURNIAK,                          :
                                             :
                      Plaintiff,             :        12-cv-481 (NSR)
        -against-                            :
                                             :        MEMORANDUM OPINION
EDNA EMILSEN,                                :        AND ORDER
                                             :
                      Defendant.             :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

        Plaintiff Stephen J. Gurniak ("Plaintiff") commenced the instant action against Defendant

Edna Emilsen ("Defendant") seeking monetary damages as a result of allegedly false statements

made by Defendant to the Internal Affairs Bureau ("IAB") of the New York City Police

Department ("NYPD"), Plaintiff's employer.  Plaintiff asserts that Defendant's statements cost

him a one-time opportunity for promotion.  In his Complaint, Plaintiff asserts state law claims

for tortious interference with employment relations, defamation *per se*, defamation *per quod*,

injurious falsehood, and *prima facie* tort.  Defendant now moves (1) for leave to file a Third

Amended Answer in order to add qualified privilege as an affirmative defense and (2) to

disqualify Plaintiff's counsel based on a purported conflict of interest.  For the following reasons,

Defendant's motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND[1]

        Plaintiff, his wife Stacey Maher ("Maher"), and Defendant's current boyfriend Andrew

Schemmel ("Schemmel") have apparently known each other for many years, and were on

friendly terms until relatively recently.  Maher was until recently employed with the NYPD.  In

1995, Schemmel's mother died under suspicious circumstances.  Schemmel was a person of

---

[1] The following facts are taken from allegations in the Complaint and from the parties' submissions.

interest in the death and was questioned by the NYPD, but his then-wife, Deborah Schemmel ("Ms. Schemmel"), provided an alibi. Thus, Schemmel was never prosecuted. In or around 2006, the Schemmels were entangled in a divorce proceeding. During that proceeding, in an affidavit, Ms. Schemmel recanted the alibi.

Also during the divorce proceedings, Ms. Schemmel subpoenaed cell phone records of Plaintiff and Maher. Schemmel informed Maher of the allegations in the divorce complaint and provided Maher with a copy of that complaint, wherein she was referenced. (Sunshine Aff. 9.) On February 9, 2006, Maher retained Robert S. Sunshine ("Sunshine") to represent her for the purposes of quashing the subpoena. Sunshine made one court appearance on March 30, 2006, and, with Maher's consent, stipulated to the release of the records to Ms. Schemmel subject to redaction. The redacted information bore on the identity of undercover officers with whom Maher interacted in her capacity as a police officer. According to Defendant, Sunshine became privy to facts regarding Schemmel's divorce and the alibi recantation while representing Maher. Additionally, Schemmel purportedly paid at least a portion of Maher's legal fees incurred in opposing the subpoena.

On August 14, 2006, Sunshine ceased representing Maher concerning the phone record subpoena and began defending Schemmel against charges levied against him by the Westchester County Child Protective Services ("CPS"). At that time, Maher agreed to waive any potential conflict of interest claim arising out of Sunshine's representation of her in Schemmel's divorce proceeding. Sunshine's retainer agreement with Schemmel limited the representation to the defense and administrative or judicial review of the CPS determination, and noted that Sunshine would "not in any manner participate in, intervene or represent [Schemmel] in his matrimonial proceeding pending in the Westchester County Supreme Court . . . ." (Def.'s Ex. A.) In early

2007, the New York State Department of Children and Family Services amended the CPS report to show that the allegations were unfounded and sealed the report as required by law.  Sunshine's representation of Schemmel was thus concluded.  Sunshine avers that during the course of this representation he never met or had dealings with Defendant and to the best of his knowledge Schemmel and Defendant were not yet romantically involved.[2]  Sunshine further avers that Plaintiff and Maher participated as witnesses for Schemmel in the appeal of the CPS determination, both being familiar with the child in question.  According to Sunshine, Schemmel voluntarily shared with Plaintiff and Maher all the information concerning the CPS determination and the appeal of such determination.  Sunshine, however, never had access to the entire CPS file or the investigation reports and factual findings.

The Complaint alleges that on November 14, 2010, Schemmel showed Maher the affidavit in which Ms. Schemmel had recanted the alibi she had previously provided when Schemmel was under investigation for his mother's death.  Maher purportedly informed Schemmel that as a police officer she was required by law to notify the assigned NYPD homicide detective of the recantation, and a verbal and physical altercation between the two ensued.  According to Defendant's Second Amended Answer, however, Plaintiff and Maher began harassing Defendant and Schemmel as early as October 4, 2010, when Schemmel and Maher's friendship purportedly began deteriorating.  Defendant alleges she initially received inappropriate phone calls, text messages, and emails.  Thereafter, Plaintiff purportedly, *inter alia*, falsely informed Defendant's employer that she was improperly obtaining Social Security benefits and falsely notified the IRS that Defendant and Schemmel had unreported income.

---

[2] It appears Schemmel and Defendant became romantically involved sometime after 2007 and before November 2010.

On or about January 15, 2011, Defendant and Schemmel secured a Temporary Order of Protection against Maher in the Town of Ramapo, New York, after filing a complaint alleging aggravated harassment.  The Town Justice Court ordered Maher to cease all communications with Defendant and Schemmel and to surrender all firearms to the Ramapo Police Department by 10:00 a.m. the following day.  On or about January 19, 2011, Defendant purportedly contacted the Ramapo PD to determine whether Maher had surrendered her weapons as directed by the Town Court.  Defendant was informed that Maher had not done so and instead was told Plaintiff had secured the firearms in his locker at work.  Defendant and Schemmel then filed an administrative complaint with IAB, in which both are named as complainants, alleging misconduct against Plaintiff.  According to the IAB file, only Defendant called IAB and stated that Schemmel had personally gone to the Ramapo PD and was informed that Maher's weapons were allowed to be secured in Plaintiff's locker.  The Complaint purportedly quotes Defendant's phone statements and references her emailed complaints to IAB concerning the storage of Maher's firearms.  Plaintiff alleges that Defendant's IAB complaint was fabricated and false.

According to Defendant, Maher's weapons were vouchered with the NYPD on January 19, 2011, and on January 21 an NYPD detective delivered them to the Ramapo PD.  On April 4, 2011, after an internal IAB investigation, the allegations of misconduct against Plaintiff were deemed unfounded.  In his Complaint, Plaintiff asserts that he was being considered for promotion from Detective Grade II to Detective Grade I during the pendency of the IAB investigation but was passed over because no one with a pending investigation "can even be considered."  (Compl. ¶ 22.)  The Complaint also alleges that during Plaintiff's 25 years on the force no one passed over for this particular promotion has ever been reconsidered.

4

## II. PROCEDURAL HISTORY

Plaintiff filed the instant Complaint on January 19, 2012, and the action was assigned to Judge Edgardo Ramos.  After failing to locate and serve Defendant, Plaintiff was granted an extension of time for service.  Upon being served, Defendant filed an Answer on September 12, 2012.

On September 14, 2012, Plaintiff's counsel wrote Defendant objecting to numerous errors in the Answer, including the assertion of counterclaims as against Maher, who is not a named party or plaintiff to the action.  In response, Defendant filed her First Amended Answer on September 28, 2012, removing some but not all the purported errors cited by Plaintiff's counsel.  On December 19, 2012, Judge Ramos held a pre-motion conference to discuss Plaintiff's anticipated motion to, *inter alia*, dismiss various asserted affirmative defenses and counterclaims.  Judge Ramos granted Defendant leave to file another amended answer. Defendant filed her Second Amended Answer on January 4, 2013.  On January 25, 2013, Judge Ramos so ordered an executed stipulation wherein Defendant withdrew her Sixth Affirmative Defense concerning statutes of limitations and her First, Second, Fourth, Fifth, Seventh, Eighth, and Ninth Counterclaims alleging defamatory injury to reputation, intentional infliction of emotional distress, negligence, *prima facie* tort, libel, slander, and defamation *per se*, respectively.  At the Rule 26(f) conference on February 15, 2013, Judge Ramos so ordered a discovery plan and scheduling order, which provided that all discovery was to be completed by December 16, 2013.

On April 8, 2013, Defendant retained new counsel, Elliot H. Fuld ("Fuld").  Fuld's appearance in this matter occurred after the March 15 deadline for serving interrogatories and first requests for the production of documents as set forth in the Court's discovery plan and

scheduling order.  On April 25, 2013, Fuld sent Judge Ramos a letter requesting a pre-motion

conference in contemplation of making the instant motion.  In July 2013, this action was

transferred to this Court, and a conference was held on July 11, 2013, at which time the Court set

a briefing schedule.[3]

## III. MOTION TO AMEND ANSWER

In a responsive pleading, unless "a party . . . affirmatively state[s] an[] . . . affirmative

defense," Fed. R. Civ. P. 8(c)(1), he or she waives that defense, *see, e.g.*, *MBIA Ins. Corp. v.*

*Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 709 (S.D.N.Y. 2012) (quoting *Travellers*

*Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1993)).  Nonetheless, a

party is allowed to amend a pleading once as a matter of course or at any time before trial with

leave of the court.  Fed. R. Civ. P. 15(a)(1)–(2).  If a party seeks leave to amend a pleading,

"[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of

a showing by the non[-]movant of prejudice or bad faith."  *AEP Energy Servs. Gas Holding Co.*

*v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*,

988 F.2d 344, 350 (2d Cir. 1993)).  "Mere delay, . . . absent a showing of bad faith or undue

prejudice, does not provide a basis for the district court to deny the right to amend."  *Ruotolo v.*

*City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor*

*Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *accord Block*, 988 F.2d at 350.  Thus, if the underlying

facts and circumstances upon which the moving party relies support the claim or defense sought

---

[3] At the conference, Defendant also desired to move for dismissal based on the argument that her statements made to IAB could not possibly have caused Defendant's alleged monetary injury.  However, the Court noted that such a challenge to causation would more appropriately be raised in a motion for summary judgment after discovery.  Thus, Defendant elected not to raise the issue in the instant motion.

to be added, the party should generally be allowed to test that claim or defense on the merits.

*United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007).

Defendant here seeks to add the affirmative defense of qualified privilege.  Defendant asserts that her complaints to IAB concerning Plaintiff's failure to comply with the Temporary Order of Protection are protected and cannot be deemed defamatory.  She asserts that qualified privilege applies when statements are made to an investigative body by someone with a public or private duty, legal or moral, or when made by one person to another concerning a subject about which they share a common interest.  (Def.'s Br. 10 (citing *Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011)).)  Defendant contends "that the qualified privilege serves the public interest 'by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether.'"  (*Id.* (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)).)

Although the case law concerning amended pleadings emphasizes that amendments should be allowed absent bad faith by the party offering the amendment or prejudice to the opposing party, Plaintiff in opposition does not assert that either is present here.  Instead, Plaintiff argues that Defendant's papers do not conform to Rule 7(b) because they do not annex a proposed amended pleading or sufficiently identify the proposed defense.  (Pl.'s Br. 4); *see also* Fed. R. Civ. P. 7(b)(1) ("The motion must . . . (B) state with particularity the grounds for seeking the order.").  According to Plaintiff, the term "qualified privilege" merely describes the extent to which a particular statement may be privileged under various identifiable defenses, including the public interest and common interest privileges, but is not a proper defense on its own.  (Pl.'s Br. 5–6 (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* §§ 114–115 (5th ed.

7

1984)).)  Thus, Plaintiff contends that the new "qualified immunity" defense would be subject to exclusion on a motion to strike.  (Pl.'s Br. 4 (citing *D.S. Am. (E.) v. Chromagraphx Imaging Sys., Inc.*, 873 F. Supp. 786, 797–98 (E.D.N.Y. 1995) ("An affirmative defense must sufficiently apprise the opposing party of the nature of the defense, providing the opposing party with adequate notice of the relevant elements of the defense.  An affirmative defense is legally 'insufficient' if, as a matter of law, it cannot succeed under any circumstances.")).)

Under New York law, "[a] statement is generally 'subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral,'" *Chandok*, 632 F.3d at 814 (quoting *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007)); *accord Stukuls v. New York*, 42 N.Y.2d 272, 278–79 (1977), or where it is "made by one person to another upon a subject in which both have an interest," *id.* at 815 (quoting *Liberman*, 80 N.Y.2d at 437); *accord Stukuls*, 42 N.Y.2d at 278–79.[4]  This may include statements made by private persons to police complaining of criminal conduct, *see, e.g.*, *Present v. Avon Prods., Inc.*, 253 A.D.2d 183 (1st Dep't 1999), statements by private persons to administrative agencies complaining of purposeful misconduct by others, *see, e.g.*, *Hellenic Wiring Contracting Corp. v. Petracca & Sons*, 307 A.D.2d 822 (1st Dep't 2003), and statements to IAB complaining of a police officer's conduct for the purpose of encouraging an internal administrative review, *see, e.g.*, *Moore v. Dormin*, 252 A.D.2d 421 (1st Dep't 1998).  The parties also make reference to a "public interest" privilege, which *Prosser & Keeton* describes as involving communications made to a person who may act in the public interest, including complaints made to the proper authorities about the conduct of public officials.  Keeton et al., *supra*, § 115, at 830–31 (citing

---

[4] *Prosser & Keeton* describes the "common interest" privilege using similar terms.  Keeton et al., *supra*, § 115, at 828.

8

*Segall v. Piazza*, 46 Misc. 2d 700 (Sup. Ct. Queens Cnty. 1965) (concerning complaint made to school principal about conduct of teacher, but describing the privilege using terminology similar to that used in *Chandok*)).

In reviewing Defendant's description of the defense to be added, it is clear that both the "common interest" and "public interest" privileges are implicated. Although Defendant's description may be inartfully drawn, it sufficiently apprises Plaintiff of the nature of the defense and provides him with adequate notice of the relevant elements.[5] *See D.S. Am. (E.)*, 873 F. Supp. at 797–98. Thus, Defendant satisfies the requirements of Rule 7(b). Furthermore, Defendant's reply supplements the information previously provided in the moving papers, as Defendant sets out her proposed affirmative defense in detail:

> Plaintiff's claims are barred by the doctrine of "qualified privilege" in that: [(a)] the statement Plaintiff alleges to be defamatory was communicated in the ***public interest*** to a body charged with investigating complaints of misconduct by persons in Plaintiff's position[; ]and [(b)] the statement Plaintiff alleges to be defamatory was made to protect the Defendant and Mr. Schemmel in that it was made to a body charged with a ***common interest*** of protecting the public from misconduct by persons such as Plaintiff and that the alleged defamatory statement was made to alert that body to Plaintiff's actions so as to protect [Defendant] and Mr. Schemmel and those similarly situated (the public) from future misconduct.

(Def.'s Reply Br. 3 (emphasis added).) Moreover, as Plaintiff fails to assert or demonstrate the existence of undue prejudice should the Court allow the amendment or bad faith by Defendant in offering it, Defendant's motion to amend her Answer to add the affirmative defense of qualified immunity is granted.

---

[5] It seems illogical to assert that notice to Plaintiff was insufficient, as Plaintiff's counsel identified the relevant elements after reviewing Defendant's moving papers.

## IV. MOTION TO DISQUALIFY COUNSEL

Defendant moves to disqualify Plaintiff's counsel of record, Sunshine, because of his previous representation of Defendant's boyfriend, non-party Schemmel, during an appeal of the CPS proceeding as well as Sunshine's previous representation of Maher in Schemmel's divorce proceeding.  Defendant asserts that New York's laws governing attorney ethics prevent Sunshine from divulging a former client's secrets and from the appearance of ethical impropriety. Defendant additionally asserts that Sunshine is privy to confidential information regarding Schemmel gained during the aforementioned representations, and that Schemmel is an essential witness in the instant action.  Thus, should Schemmel testify, the confidential information could be used against Schemmel on cross-examination to impeach his credibility.  Defendant further asserts that although Schemmel features prominently in the factual allegations of the Complaint and is one of two named complainants in the IAB investigation, Plaintiff deliberately failed to name him as a co-defendant so that Sunshine could circumvent the rules of ethics.

It is well settled that a party in a civil action has the "right to freely choose his [or her] own counsel." *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)); *see also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).  Thus, the Second Circuit disfavors attorney disqualification, and "the party seeking it must meet a high standard of proof."  *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011) (citing *Evans*, 715 F.2d at 791 ("[T]here is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely

10

to choose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession.")).

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video*, 409 F.3d at 132 (quoting *Nyquist*, 590 F.2d at 1246). A court should be hesitant to disqualify an attorney unless his or her "conduct tends to taint the underlying trial." *Id.* (quoting *Nyquist*, 590 F.2d at 1246); *accord Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). State attorney disciplinary rules may provide general guidance, *Hempstead Video*, 409 F.3d at 132, and certainly "the salutary provisions [of New York's ethical rules] have consistently been relied upon by the courts of this district and circuit in evaluating the ethical conduct of attorneys," *United States v. Quest Diagnostics, Inc.*, 734 F.3d 154, 163 (2d Cir. 2013) (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 n.12 (2d Cir. 1975)) (internal quotation marks omitted). However, not every violation of state rules will lead to disqualification, *Am. Int'l Grp.*, 827 F. Supp. 2d at 345 (quoting *Hempstead Video*, 409 F.3d at 132), since such rules "were not intended to be used as rules governing disqualification motions," *Armstrong v. McAlpin*, 625 F.2d 433, 446 n.26 (2d Cir. 1980) (en banc) (citations omitted), *vacated on other grounds*, 449 U.S. 1106 (1981); *see also S & S hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 444–45 (1987) (quoting *Armstrong*, 625 F.2d at 446 n.26) (noting that state professional ethics rules "provide[] 'guidance for the courts in determining whether a case would be tainted by the participation of an attorney'").

In a case involving successive representation of clients, a court may disqualify an attorney if

(1) the moving party is a former client of the adverse party's counsel;

11

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133 (quoting *Evans*, 715 F.2d at 791); *cf.* N.Y. R. Prof'l Conduct 1.9(a), 22 N.Y.C.R.R. § 1200.0 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").[6]  The three *Evans* requirements are addressed in turn.

### A. Moving Party as Former Client

Defendant concedes that she has never been Sunshine's client.  Despite this fact, Defendant asserts that (a) Schemmel should have been named as a co-defendant based on the factual allegations in the Complaint and (b) the "former client" requirement can nevertheless be satisfied where the attorney previously represented an essential non-party witness whom the attorney is likely to cross-examine.

The Court notes that Defendant does not demonstrate Schemmel should have been a named co-defendant.  Although in the IAB investigation Schemmel is listed as a complainant, the proffered documentation shows that only Defendant contacted IAB to accuse Plaintiff of attempting to circumvent the order of protection by safeguarding Maher's firearms in his locker. While Plaintiff could presumably have named Schemmel as a co-defendant in the instant action,

---

[6] The New York Rules of Professional Conduct became effective April 1, 2009, *Quest Diagnostics, Inc.*, 734 F.3d at 157 n.1, replacing the Code of Professional Responsibility which the parties cite.

Plaintiff was not required to do so.  Plaintiff may lack sufficient basis to assert Defendant was

acting on Schemmel's behalf, *see, e.g.*, *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 495–97

(E.D.N.Y. 2012); *Mahoney v. Staffa*, 256 A.D.2d 827 (3d Dep't 1998), or that Schemmel was

involved in making the allegedly false statements to IAB, *see e.g.*, *Trudeau v. N.Y. State*

*Consumer Protection Bureau*, No. 1:05-CV-1019 (GLS/RFT), 2006 WL 1229018, at *10

(N.D.N.Y. May 4, 2006) (quoting *Treppel v. Biovale Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL

2086339, at *3 (S.D.N.Y. Aug. 30, 2005)) ("[A] claim for defamation will not 'survive without

an allegation that [a] defendant[ ] participated in the creation or the publication of the statements

at issue.'"); *Gaeta v. N.Y. News, Inc.*, 95 A.D.2d 315 (1st Dep't 1983), *rev'd on other grounds*,

62 N.Y.2d 340 (1984).

      More importantly, the cases which Defendant cites concerning essential non-party

witnesses are not persuasive.  In *Lorber v. Winston*, No. 12–CV–3571 (ADS) (ETB), 2012 WL

5904522, at *1–2 (E.D.N.Y. Nov. 26, 2012), before the plaintiff and defendant began conducting

business, plaintiff's counsel represented the defendant in proceedings before the National

Association of Securities Dealers concerning securities fraud and money laundering, and the

defendant had been a prospective client in a criminal proceeding for the same behavior.  The

*Lorber* court found that facts surrounding the previous representation would be material to the

plaintiff's asserted claims of fraud and related causes of action, especially since the defendant

had allegedly convinced the plaintiff that the criminal case against him was unjust and based on

his partner's fraud.  *Id.* at *9.  Thus, in that particular instance, the court held that the prospect of

the attorney cross-examining his former client about his pertinent past criminal conduct was

sufficient grounds to disqualify the attorney.  *Id.* at *10.  However, the *Lorber* court also noted

that the prospect of cross-examining a former client "is generally not a sufficient basis to

disqualify an attorney," and that it was instead guided by the more generalized goal of ensuring a trial process free from taint. *Id.* (citing *Med. Diagnostic Imaging, PLLC v. CoreCare Nat'l, LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008); *Skidmore v. Warburg Dillon Read LLC*, No. 99 Civ. 10525 (NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001)). In other words, the substantial relationship and access to confidences requirements played a decisive role, not merely the fact that the attorney would have to cross-examine his former client who, unlike here, was a named party.

In *Skidmore v. Warburg Dillon Read LLC*, 2001 WL 504876, plaintiff's counsel in a wrongful termination age discrimination suit had represented another of the defendant's former employees in contemplation of bringing a similar claim. The attorney had begun representing both individuals at about the same time and terminated representation of the co-worker by securing a severance package for him before the plaintiff's action was filed. *Id.* at *1. Allegedly, the co-worker had told the plaintiff that a manager planned to lower the average age of the workforce, but at deposition the co-worker disputed every aspect of the plaintiff's account. *Id.* at *1. There, as here, the moving party was *not* a former client of the plaintiff's counsel, yet the court did not deny the motion to disqualify on that basis alone. Instead, the court considered whether counsel's involvement would taint the proceeding where counsel would have to cross-examine the co-worker and perhaps impeach his credibility. *Id.* at *1, *5. However, in declining to disqualify the attorney, *id.* at *4, the court found that counsel had not been "in a position where he could have received information which his former client might reasonably have assumed [he] would withhold from his present client," *id.* at *3 (quoting *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977)).

Similarly, here, even assuming, *arguendo*, that the presence of an essential witness who is not a party could satisfy the "former client" requirement, Schemmel had no reason to assume Sunshine would withhold the purportedly relevant information from Plaintiff and Maher because Schemmel already shared it with them himself.  Thus, the Court agrees with *Skidmore* that cross-examination of the former client is insufficient on its own to disqualify Plaintiff's counsel.  *See id.* at *5 (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979)) ("[A]n 'appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases.'").

**B. Substantial Relationship between Past Subject Matter and Present Case**

A pending matter is substantially related to the subject matter of an attorney's prior representation "when the relationship between issues in the prior and present cases is patently clear . . . [and when] the issues involved have been 'identical' or 'essentially the same.'" *Monzon v. United States*, Nos. 13 Civ. 1943 (DLC), 13 Cr. 157-17, 2013 WL 4804095, at *3 (S.D.N.Y. Sept. 9, 2013) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir. 1978)).  For instance, in *Monzon*, a habeas petitioner's counsel had previously represented the petitioner's co-defendant in the underlying criminal case such that the issues involved in the two cases were deemed substantially related.  *Id.* at *1, *3.  In *Skidmore*, the issue in the plaintiff's case and the co-worker's potential case was identical: whether the defendant engaged in age discrimination when terminating their employment.  2001 WL 504876, at *1.  In *Lorber*, the underlying issue of whether the defendant had been guilty of fraud and money laundering was to resurface in determining whether he had fraudulently induced the plaintiff into believing the criminal charges against him were unjustified, and thus the cases were deemed substantially related.  2012 WL 5904522, at *9.  In *United States Football League v. National Football*

*League*, an antitrust lawsuit, where a law firm had represented the USFL in its creation—including the search for owners, structuring of the league, player recruitment, and allocation of revenues—but was representing the NFL in the antitrust suit, the previous matters were substantially related to the issues of liability and damages, since the court would need to determine whether the USFL's viability was affected by the NFL's previous monopolization of the market or whether the USFL failed due to its own faulty business model which the law firm had helped create.  605 F. Supp. 1448, 1460 (S.D.N.Y. 1985).

Turning to the instant motion, Defendant does not demonstrate that the issues in Sunshine's previous representation of Schemmel and Maher are substantially related to the alleged defamation and related torts in the instant action.  The representation of Schemmel in appealing the CPS determination concerned whether Schemmel had abused or neglected one of his children, and the retainer agreement expressly excluded any participation in Schemmel's divorce proceeding.  The representation of Maher in Schemmel's divorce proceeding involved efforts to quash a subpoena for cell phone records.  In neither of the above was the cause of death of Schemmel's mother at issue, except to the extent that Ms. Schemmel recanted the alibi she provided previously.  Here, by contrast, to succeed on his claims, Plaintiff must demonstrate that Defendant's statements to IAB in accusing Plaintiff of improperly storing Maher's firearms in his locker were false, intentionally malicious, and/or meant to cause Plaintiff economic harm.  Such issues cannot be described as "identical" to or "essentially the same" as the alleged existence of child abuse, the propriety of divulging a police officer's cell phone records, the reasons for Schemmel's divorce, or the facts surrounding the death of Schemmel's mother.  *Gov't of India*, 569 F.2d at 740.  Thus, the Court finds no substantial relationship between Sunshine's previous representations and the instant action.

16

**C. Access to Relevant Privileged Information**

As previously noted, to disqualify an attorney "it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977), *quoted in Cohen v. Acorn Int'l*, 921 F. Supp. 1062, 1064 (S.D.N.Y. 1995); *accord Skidmore*, 2001 WL 504876, at *3. Here, Defendant argues that because Sunshine represented Maher during Schemmel's divorce proceeding and because Sunshine represented Schemmel in the appeal of the CPS determination, Sunshine received confidential information which could be used to damage Schemmel's credibility at trial. Plaintiff counters that Schemmel could not reasonably have assumed Sunshine would withhold relevant information from Plaintiff because Schemmel often kept Plaintiff and Maher apprised of the happenings in his divorce proceeding and voluntarily disclosed to them otherwise privileged information, including that his ex-wife had recanted his alibi.

Defendant fails to show the confidential information Sunshine received from Schemmel is relevant to the issues of the instant action, which are not substantially related to the previous representations. Furthermore, even assuming such confidential information is relevant, *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005), Defendant has not demonstrated that Schemmel could reasonably have assumed Sunshine would withhold this information from Plaintiff, to whom Schemmel apparently confided the relevant information, *Allegaert*, 565 F.2d at 250. Thus, the Court finds that this requirement is not met.

Accordingly, as Defendant fails to meet the requisite "high standard of proof" to justify the disqualification of Sunshine, the motion to disqualify Plaintiff's counsel must be denied.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011).

**V. CONCLUSION**

For the stated reasons, Defendant's motion is GRANTED in part, only to the extent of allowing her to file a Third Amended Answer adding the affirmative defense of qualified immunity, and is otherwise DENIED.  Defendant is ORDERED to file her Third Amended Answer within 30 days from the date of this order.  The parties are hereby ORDERED to submit an amended civil case discovery plan and scheduling order within 30 days of the date of this order.  The Clerk of Court is respectfully requested to terminate the motion (Doc. 29).


Dated:   Jan  30          , 2014
         White Plains, New York

SO ORDERED:

_____  1/30/14
         NELSON S. ROMÁN
         United States District Judge